UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN SROGA, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 9288 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| SGT. DE JESUS, CITY OF CHICAGO, and SIX JOHN DOE CHICAGO POLICE OFFICERS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Alleging that several Chicago police officers broke into his house in the early morning hours of November 17, 2010, Kevin Sroga filed this *pro se* lawsuit against a police sergeant named De Jesus and six unnamed Chicago police officers (collectively, the "Police Defendants"), along with the City of Chicago. Doc. 5. The complaint advances ten counts under 42 U.S.C. § 1983 and Illinois law: (1) a § 1983 claim against the Police Defendants for illegal entry; (2) a § 1983 claim against the Police Defendants for illegal search; (3) a § 1983 civil conspiracy claim against the Police Defendants; (4) a state law claim for "criminal damage to property" against the Police Defendants; (5) a § 1983 claim against the Police Defendants for failure to intervene; (6) a § 1983 supervisory liability claim against De Jesus; (7) a § 1983 claim against the City under the municipal liability doctrine of *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (8) a state law claim for intentional infliction of emotional distress ("IIED") against the Police Defendants; (9) a state law *respondeat superior* claim against the City, which alleges that the City is liable for the Police Defendants' state law violations alleged

1

in Counts IV and VIII; and (10) a state law indemnification claim against the City under 745 ILCS 10/9-102. Doc. 5 at ¶¶ 39-85.

The City, which is the only defendant to have appeared thus far, has moved to dismiss the state law claims—Counts IV, VIII, and IX—under Federal Rule of Civil Procedure 12(b)(6). Doc. 12. The motion seeks dismissal of those claims on statute of limitations grounds only. Because those claims are time-barred, the City's motion is granted and Counts IV, VIII, and IX are dismissed with prejudice.

## Background

In considering the motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Sroga's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Sroga as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Sroga lives in the Humboldt Park neighborhood of Chicago. Doc. 5 at ¶¶ 3, 30. At about 6:15 a.m. on November 17, 2010, Sroga was awakened by unusual noises inside his home. *Id*. at ¶ 7. At first he suspected the noises were caused by his father, who lived with him, but then he noticed that there were multiple sources of noise. *Id*. at ¶ 8. Sroga got up to investigate and found that his father was still asleep in bed. *Id*. at ¶ 9. He awoke his father and told him that someone was in their home. *Id*. at ¶ 10. Sroga then

went to the front door and discovered that the two outer vestibule doors were wide open and a Chicago police vehicle was parked outside. *Id*. at ¶¶ 11-12. He shouted "Hello" and asked the police what they were doing. *Id*. at ¶¶ 13-15. Sroga was confronted by an officer with a military-style assault rifle, and other officers converged upon him from other locations in his home. *Id*. at ¶¶ 16-17.

As Sroga asked the officers what they were doing, he was approached by a plainclothes officer who identified himself as "Sgt. De Jesus." *Id*. at ¶ 18. When Sroga asked how the officers had entered his locked home, De Jesus told Sroga to "shut the fuck up before I throw you in handcuffs." *Id*. at ¶ 20. Sroga asked the officers whether they had a warrant, and De Jesus again told him to "shut the fuck up." *Id*. at ¶¶ 21-22. Sroga pursued his inquiry about the warrant, and was again told by De Jesus to "shut the fuck up before I throw you in cuffs and place you under arrest!" *Id*. at ¶¶ 23-24. De Jesus's threats, together with his loud and forceful manner, intimidated Sroga and put him in fear that he would be arrested. *Id*. at ¶ 25. Nonetheless, he told the officers to either "produce a warrant or leave." *Id*. at ¶ 26. At that point, Sroga's father appeared and joined in his son's request that the officers either leave or produce a warrant. *Id*. at ¶ 27. Ultimately, the officers left, though not before telling Sroga "you picked this neighborhood to live in" and "welcome to the real Chicago Police Department." *Id*. at ¶ 28. Upon escorting the officers off the premises, Sroga noticed that his main entry door had been badly damaged by the officers when they entered his home. *Id*. at ¶ 34. Sroga had not consented to the officers' entry, and nor had he done anything illegal. *Id*. at ¶ 35.

In his brief opposing dismissal, Sroga makes several additional allegations, which are consistent with the complaint and which the court must therefore assume to be true at

this stage. *See Geinosky*, 675 F.3d at 745 n.1. First, Sroga alleges that the officers told him during their confrontation that "they had a search warrant to enter the premises and conduct a search." Doc. 20 at 2. Sroga believed this statement at the time, though it turned out to be a lie, and he therefore believed that the officers had a right to enter his home. *Id*. at 2-3. Second, Sroga says that he filed a complaint with the "I.P.R.A.," presumably referring to Chicago's Independent Police Review Authority, "within a reasonable amount of time" after the confrontation. *Id*. at 3. Sroga was later told by the I.P.R.A. that the complaint had been transferred to the Internal Affairs Division of the Chicago Police Department. *Ibid*. Then, in the summer of 2012, Sroga contacted the Internal Affairs Division to check up on the complaint and was informed that the officers actually had an arrest warrant, not a search warrant, and that the warrant was for the arrest of a person who had never resided on Sroga's property. *Id*. at 4.

Because he no longer believed that the officers had had a legal right to enter his home, Sroga filed this lawsuit on November 19, 2012—two years and two days after his confrontation with the officers. Doc. 1. The court has original jurisdiction over the § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

**Discussion**

The City seeks dismissal of Counts IV, VIII, and IX on statute of limitations grounds. "A statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations."

4

*Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). Although only the Police Defendants, and not the City itself, are named as Defendants to Counts IV and VIII, the court will consider the City's motion to dismiss those counts because Count IX claims that the City is vicariously liable for the state law violations alleged in Counts IV and VIII.

Because the challenged counts advance claims under Illinois law, the court must apply the statute of limitations that applies under Illinois law along with "any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks omitted). The applicable statute of limitations is provided by the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq*., which provides in relevant part:

> No civil action other than an action described in subsection (b) [which is limited to actions arising out of "patient care" and so is irrelevant to this case] may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

745 ILCS 10/8-101(a). Sroga does not dispute that the City is a "local entity" and that the Police Defendants are "its employees." And it is undisputed that the incident complained of occurred on November 17, 2010, and that Sroga did not sue until over two years later, on November 19, 2012. But Sroga advances six grounds for rejecting the City's argument that his state law claims are time-barred—at least his opposition brief, read generously, could be understood to advance six such arguments, and because Sroga is *pro se*, the court will consider each of those arguments. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'….") (quoting

5

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[w]e too construe pro se filings liberally").

First, Sroga argues that the statute of limitations was tolled by the "discovery rule" until he learned from the Internal Affairs Division that the Police Defendants had entered his house with only an arrest warrant for a third party who did not live there, and not with a search warrant for his property, because it was only then that Sroga "discovered" that he had suffered an actionable wrong. Doc. 20 at 2-3. Settled Fourth Amendment law holds that "lacking a search warrant or exigent circumstances, an officer may not enter the residence of someone other than the named suspect to execute the arrest warrant." *Covington v. Smith*, 259 F. App'x 871, 873 (7th Cir. 2008) (citing *Steagald v. United States*, 451 U.S. 204, 216 (1981)). The City does not suggest in reply to Sroga's argument either that a different rule applies to Sroga's claims under Illinois law or that Sroga is wrong to imply that, had the officers possessed a search warrant when they entered his home, the search warrant would have prevented Sroga from succeeding on his state law claims. Because the City has forfeited both of those arguments by failing to make them, *see Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (brackets and internal quotation marks omitted), the court will assume that the distinction between a search warrant for Sroga's home and an arrest warrant for a third party indeed made the difference in whether Sroga had actionable state law claims.

6

The court therefore supposes that Sroga did not know until the summer of 2012 that, because the warrant did not authorize the Police Defendants' entry into his home, the entry and the ensuing confrontation were actionable. Nonetheless, the discovery rule does not save Sroga's claims from the statute of limitations. "The Illinois discovery rule operates to preserve a claim until the plaintiff knows or reasonably should know that he or she has been wrongfully injured." *Indep. Trust Corp.*, 665 F.3d at 938. The Supreme Court of Illinois has explained that "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981). Thus, "[a] plaintiff's knowledge that his injury was wrongfully caused [as required to commence the limitations clock] does not necessarily mean knowledge of *actionable* conduct." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (emphasis added).

It is beyond any reasonable dispute that when six armed police officers enter a person's home without notice or consent in the early morning, damage his property, and respond to his reasonable questions with profanity and threats to arrest him although he has done nothing wrong, that person is on notice that he has been injured and is "possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox Coll.*, 430 N.E.2d at 980-81. True, a person in that situation may not know with certainty that he will prevail if he sues the officers, but plaintiffs can rarely be certain. Statutes of limitations would have little force if they kicked in only once the potential

plaintiff had nailed down every loose end that might affect the outcome of his suit. *Cf. Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981) ("if knowledge of negligent conduct were the standard [for the discovery rule], a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests"). Sroga had all the information necessary to put him "on notice of the need to investigate whether actionable conduct [wa]s involved," *Broaddus v. Shields*, 665 F.3d 846, 855 (7th Cir. 2011) (quoting *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 22 (2005)), when the Police Defendants broke into his house, damaged his door, and threatened to arrest him for asking them to produce a warrant. That he may not have known at that time that the injury was actionable does not alter the analysis. It follows that the discovery rule did not toll the statute of limitations.

Second, Sroga's brief could be read to argue that Defendants are equitably estopped from asserting the statute of limitations because the Police Defendants told him, falsely, that they had a search warrant, which misled him into believing he had no claim against them and delayed his filing of this suit. "In Illinois, the doctrine of equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took certain active steps to prevent the plaintiff from suing. The Illinois courts apply this doctrine most typically in situations where the defendant has 'lulled' the plaintiff into delaying suit, either by promising not to plead a limitations defense or by concealing evidence that the plaintiff needed to determine the existence of her claim." *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (footnote omitted); *see also Athmer v. C.E.I. Equip. Co.*, 121 F.3d 294, 296 (7th Cir. 1997) ("The doctrine of equitable estoppel can be used to stop the running of the limitations period if the

8

defendant makes efforts to prevent the plaintiff from suing in time, as by promising him not to plead the statute of limitations or by concealing his identity from the plaintiff."). "To prevail on this theory, the party asserting estoppel must establish that she *reasonably* relied upon the other party's conduct or representations in forbearing suit." *Weatherly v. Ill. Human Rights Comm'n*, 788 N.E.2d 1175, 1181 (Ill. App. 2003) (emphasis added); *see also Lissner v. Michael Reese Hosp. & Med. Ctr.*, 537 N.E.2d 1002, 1009 (Ill. App. 1989) ("In order to rely on the doctrine of equitable estoppel, [a] plaintiff must show that he relied upon an act or representation of fact and had no knowledge or means of knowing the true facts."). "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." *J.S. Reimer, Inc. v. Vill. of Orland Hills*, __ N.E.2d __, 2013 WL 1952709, at *7 (Ill. App. May 10, 2013) (internal quotation marks omitted).

Sroga could not have reasonably relied on De Jesus's representation that the Police Defendants had a search warrant for his home. If Sroga did rely on that assertion, not having been shown any such warrant, then he "shut his eyes" to an obvious fact: that the Police Defendants hoped to avoid being sued for the damage they had done to Sroga's home and psyche. Sroga's position is no different from that of anyone else who is injured and whose injurer claims not to be liable; such persons are not entitled to the benefit of equitable estoppel. *See Stephan v. Goldinger*, 325 F.3d 874, 877 (7th Cir. 2003) ("[A] denial of liability is not a basis for equitable estoppel—otherwise a statute of limitations would never run unless the potential defendant confessed error before he was sued!"); *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002) ("This court has explained that the mere denial of one's role in a potential lawsuit is insufficient to give

9

rise to equitable estoppel."); *Bishop v. Gainer*, 272 F.3d 1009, 1014-15 (7th Cir. 2001) (to allow a "denial of liability" to "constitute a basis for equitable estoppel … would mean that a statute of limitations would not begin to run until a defendant acknowledged liability, an entirely strange concept"); *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1241 (7th Cir. 1993) ("The plaintiffs argue that Continental should be equitably estopped to plead the statute of limitations by its having insisted on the validity of the Singletary loan long after Continental knew it was phony. But a mere denial of liability … cannot be the foundation of an equitable estoppel. Otherwise statutes of limitations would be toothless; the only cases in which they could be successfully pleaded would be ones in which the defendant acknowledged liability. It is not the denial of liability or a refusal to cooperate in making the plaintiff's case that extends the statute of limitations, but affirmative efforts to delay the plaintiff's bringing suit.") (citations omitted).

Third, Sroga says that "this cause of action is governed under a Federal Question Section 1983 Claim(s). Those claims extend to a two-year statute of limitations period in which the Court may extend its supplement authority to entertain and hear State claims in association with this cause of action." Doc. 20 at 3. Sroga is correct that he has asserted claims under § 1983 as well as under state law; that the statute of limitations applicable to his § 1983 claims is two years, *see Woods v. Ill. Dept. of Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("the limitations period applicable to *all* § 1983 claims brought in Illinois is two years, as provided in 735 ILCS 5/13-202"); and that this court's jurisdiction to hear his state law claims is supplemental to its original jurisdiction to hear his § 1983 claims, *see* 28 U.S.C. § 1367(a). But Sroga's apparent conclusion—that the

10

two-year statute of limitations applicable to his § 1983 claims therefore also applies to his state law claims—is incorrect.  Rather, this federal court must apply the same one-year limitations period to Sroga's state law claims that would apply to those claims had he brought them in Illinois state court.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 746 (1980) ("We cannot give [the cause of action] longer life in the federal court than it would have had in the state court without adding something to the cause of action.  We may not do that consistently with *Erie R. Co. v. Tompkins*[, 304 U.S. 64 (1938)].") (quoting *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533-34 (1949)) (first alteration in original); *Bernstein v. Bankert*, 702 F.3d 964, 985 (7th Cir. 2012) ("We apply the statute of limitations of the state whose substantive law governs the claim.").

Fourth, Sroga submits that "[t]he purposes of the statute of limitations were not meant to shield a wrong doer; rather, they were meant to provide an opportunity to investigate factors upon which liability is based while the evidence is still discoverable." Doc. 20 at 3.  Presumably it is true that Illinois's purpose in setting a one-year statute of limitations was not to shield wrongdoers.  But, whatever its purposes were, the Illinois legislature determined that those purposes would be best served by a one-year statute of limitations.  It is not the place of this court to second-guess that determination by refusing to apply that limitations period to Sroga's state law claims.

Fifth, Sroga's brief could be read to argue that the limitations period was tolled while he pursued relief thorough the I.P.R.A. and the Internal Affairs Division: "The Plaintiff … filed a complaint with I.P.R.A. within a reasonable amount of time after the incident arose.  From I.P.R.A. plaintiff had knowledge that his logged complaint was then transferred to the Internal Affairs Division of the Chicago Police Department." Doc. 20

at 3. Sroga has not provided any authority for the proposition either that he was required to pursue a grievance with the state authorities before bringing his state law claims against the Police Defendants or that, even if he was not required to do so, his decision to do so tolled the statute of limitations. The court has also been unable to find authority for either of those propositions; the court believes that they are incorrect, and that Sroga's state administrative grievance did not toll the statute of limitations. At any rate, Sroga has forfeited any argument to the contrary by failing to cite supporting authority. *See Jackson v. Astrue*, 472 F. App'x 421, 422 (7th Cir. 2012) ("although we construe pro se filings liberally, even uncounseled litigants must present arguments supported by citations to the record and legal authority").

Sixth, Sroga contends that "Defendants are not entitled to relief from these claims based on the Statute of Limitations because their 'Conduct' was of such that as that they acted in a 'willful and wanton manner.' Under the Illinois Tort Immunity Act, immunity does not extend to the acts of a public employees which are … willful and wanton." Doc. 20 at 4. The court will assume for present purposes that Sroga has adequately alleged willful and wanton misconduct by the Police Defendants and that they therefore would not be entitled to immunity under the Illinois Tort Immunity Act. *See Munizza v. City of Chicago*, 583 N.E.2d 561, 565 (Ill. App. 1991) ("such immunity should not extend to … [a] public employee's willful and wanton acts"). But it does not follow that the statute of limitations provided by the Act does not apply to Defendants. In fact, it does apply to them. *See Luciano v. Waubonsee Cmty. Coll.*, 614 N.E.2d 904, 910 (Ill. App. 1993) ("allegations of wilful and wanton conduct do not deprive a local public entity and its

employees of the benefit of the shorter limitations period provided in section 8-101");
*Flint v. Belvidere*, 2012 WL 470113, at *6 (N.D. Ill. Feb. 13, 2012) (same).

**Conclusion**

Because Sroga filed this lawsuit more than a year after the statute of limitations on his state law claims had run, and because his arguments that the claims are not time-barred lack merit, Counts IV, VIII, and IX of the complaint are dismissed. The dismissal is with prejudice because the flaw in those claims, that Sroga did not bring suit until after the statute of limitations had run, cannot be cured by repleading. *See Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996) (holding that where the "statute of limitations ha[s] run …, the dismissal should [be] with prejudice"); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189-90 (10th Cir. 2012) (affirming the district court's rejection of the plaintiff's request for leave to amend where the amendment would have been futile because the claims were untimely); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 353 (2d Cir. 1993) (same).

June 3, 2013                                          _____
                                                        United States District Judge